**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

HOMESTAR PROPERTY SOLUTIONS,
f/k/a ENERGY REO SOLUTIONS,

Plaintiff,

v.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 14-03100 (MJD/FLN)

VRM MORTGAGE SERVICES, INC.,

Defendant.

---

Benjamin D. Eastburn, Daniel Oberdorfer, and Donald T. Campbell, Stinson Leonard Street LLP, Counsel for Plaintiff.

Margaret Ann Santos and Russell S. Ponessa, Hinshaw & Culbertson LLP, Counsel for Defendant.

---

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Compel Arbitration and Dismiss Litigation. [Docket No. 12] The Court heard oral argument on Friday, December 12, 2014.

## II. BACKGROUND

### A. Factual Background

### 1. The Parties

Plaintiff HomeStar Property Solutions ("HomeStar") is a limited liability company with a principal place of business in Maple Grove, Minnesota. ([Docket No. 5] Am. Compl. ¶ 1.) HomeStar provides repair and preservation services on residential properties throughout the United States. (Id. ¶ 7.)

Defendant VRM Mortgage Services ("VRM") is a corporation with a principal place of business in Carrollton, Texas. (Id. ¶ 2.) VRM provides real estate management, asset disposition, loan servicing, and loan sale preparation services to real estate-owned ("REO") properties that are owned by the United States Veterans Administration ("the VA"). (Id. ¶ 6.) Some of these properties are located in Minnesota. (Id. ¶ 5.)

### 2. The 2012 Master Property Services Agreement

In 2012, VRM sought HomeStar's expertise in providing preservation and maintenance services to REO properties on which the VA had foreclosed mortgages. (Id. ¶ 8.) To that end, on or about September 29, 2012, VRM entered into a Master Property Services Agreement ("the 2012 MSA") with HomeStar. (Id. ¶ 9; [Docket No. 15] Kirkham Aff., Ex. 2, 2012 MSA.) Under the 2012 MSA, HomeStar was required to remove debris, cover-up graffiti, kill pests, trim

shrubs, and repair roofing to VA properties, amongst other obligations. (See generally, 2012 MSA, Ex. A "Services to be Performed" at pp. 4-7.)

**a) 2012 MSA: Arbitration Clause**

Section 28 of the 2012 MSA is entitled "ARBITRATION" and provides:

> 28.01 Binding Arbitration. Unless specifically addressed elsewhere in the Agreement, the parties agree that any controversy or claim between or among the parties hereto shall be determined by binding arbitration in accordance with the Federal Arbitration Act (or if not applicable, the applicable state law), the Rules of Practice and Procedure for the Arbitration of Commercial Disputes of the American Arbitration Association ("AAA").

(2012 MSA § 28.)

**3. The 2013 Master Services Agreement**

On or about November 13, 2013, VRM entered into another agreement with HomeStar to perform preservation and maintenance services on certain REO properties on which the VA had foreclosed mortgages. (Am. Compl. ¶ 10; Kirkham Aff., Ex. 2, Master Services Agreement: Property Preservation Services ("2013 MSA").)

**a) Arbitration Clause**

Unlike the 2012 MSA, the 2013 MSA requires arbitration for only "Non-Government Related Claims." More specifically, Paragraph 16 of the 2013 MSA states:

Non-Government Related Claims. For any claim, dispute or controversy that is not a Government-Related Claim (a "**Dispute**"), **Company** agrees as follows:

Should a Dispute arise between **Company** and **Client** (collectively, the "**Parties**") that is not otherwise resolved in the ordinary course of business then as a condition precedent to mediation and arbitration, the Parties by their principals, shall first endeavor to resolve any Dispute in good faith over a period of sixty (60) calendar days (the "**Negotiation Period**"), which Negotiation Period shall commence upon the Party receiving notice of such Dispute from the Party initiating the Dispute.

> A. Should the Dispute not be resolved during the Negotiation Period, said dispute will be decided by arbitration in accordance with the then existing American Arbitration Association ("**AAA**") Commercial Arbitration Rules. This agreement to arbitrate will be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators will be final, and judgment may be entered upon and in accordance with applicable law in any court having jurisdiction hereof.
>
> B. As a condition precedent to arbitration, the Parties shall first attempt to mediate any Dispute not resolved under Section 11 above, which mediation effort shall occur over a period of sixty (60) calendar days from the date a demand for arbitration and/or request for mediation is filed with the AAA. Such mediation shall be subject to the AAA Commercial Mediation Procedures then existing. The demand for arbitration and request to mediate may be filed simultaneously with AAA.

(2013 MSA (emphasis in original).) The 2013 MSA defines VRM as "Client" and HomeStar as "Company." (Id. p. 1) The phrase "non-government related claims" is not defined in the 2013 MSA.

**b) Merger Clause**

The 2013 MSA also contains a standard merger clause, which provides:

> Entire Understanding. This MSA, together with the Statement of Work, contain the entire understanding and agreement between the parties, and supersede any prior oral or written understandings or agreements. No representations, warranties, inducements, promises, understandings or agreements, oral or otherwise, between the parties not contained in this MSA or the Statement of Work shall be of any force or effect.

(Id. ¶ 21.)

**4. The Dispute**

Throughout 2013 and 2014, the relationship between VRM and HomeStar deteriorated. Generally, HomeStar claims that VRM breached its obligations under both of the 2012 and 2013 MSAs by failing to pay for service to approximately 700 REO properties, totaling $512,072.20. (See Am. Compl. ¶¶ 44-46.) Of that sum, VRM's records show that $324,428.45 worth of invoices stem from services that were performed by HomeStar under the 2012 MSA, prior to the execution of the 2013 MSA. (Second Kirkham Aff., Ex. 3.)

**B. Procedural History**

HomeStar filed its initial Complaint on August 5, 2014, asserting Count One: Breach of Contract; Count Two: Promissory Estoppel; Count Three: Unjust Enrichment; and Count Four: Misrepresentation.

On September 5, 2014, HomeStar amended its Complaint to add Count Five: Breach of Contract (Breach of Confidentiality) and Count Six: Violation of the Uniform Trade Secrets Act.

VRM filed the instant Motion on October 3, 2014, seeking to compel arbitration of all of HomeStar's claims and dismiss its lawsuit, or, in the alternative, stay proceedings pending arbitration.

## III. DISCUSSION

Generally, VRM argues that claims arising from services rendered prior to November 23, 2013, should be arbitrated pursuant to the broad language of the 2012 MSA arbitration clause. VRM argues that disputed invoices arising from services performed after November 23, 2013, are "Non-Government Claims" and therefore subject to arbitration under the 2013 MSA arbitration clause.

HomeStar argues that the merger clause within the 2013 MSA has the effect of superseding the earlier, 2012 MSA. As such, the 2013 MSA arbitration clause is the only one that governs the entire dispute. Because its claims are for

damages related to properties owned by the VA, HomeStar argues that they are government-related and therefore outside the scope of the 2013 MSA ("non-government") arbitration clause.

**A. Standard to Compel Arbitration**

The Federal Arbitration Act ("FAA") provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Arbitration provisions "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T

Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citations omitted). "[A] district court [must] send a claim to arbitration when presented with a broad arbitration clause . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision." 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008) (citations omitted). Courts have consistently recognized that "there is a strong policy favoring arbitration." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 638–39 (1985); Moses H. Cone, 460 U.S. at 24–25.

In order to determine if a claim is arbitrable, the Court must first determine whether a valid agreement to arbitrate exists between the parties. Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001). Next, the Court must decide whether the existing dispute falls under the coverage of the agreement. Id. "[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between the litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." Donaldson Co., Inc. v. Burroughs Diesel, Inc., 581 F.3d 726, 731 (8th Cir. 2009).

### 1. Whether a Valid Agreement Exists

#### a) Choice of State Law

"[W]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." Hudson v. ConAgra Poultry Co., 484 F.3d 496, 500 (8th Cir. 2007) (quoting First Options of Chicago Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

Neither party disputes that a valid and enforceable arbitration agreement exists, or that Texas law applies per choice of law provisions within the 2012 and 2013 MSAs. (See 2012 MSA ¶ 29.01; 2013 MSA ¶ 23.)

#### b) Effect of the 2013 MSA Merger Clause

Under Texas law, "[w]hen a contract contains a merger or integration clause, the contract's execution presumes that all prior negotiations and agreements between the parties relating to the transaction have been merged into the contract, and that it . . . cannot be added to, varied, or contradicted by parol evidence . . . . absent pleading and proof of an ambiguity, fraud, or accident." StarCom Commc'ns., LLC v. Phonetec, LP, No. 11-07-00305-CV, 2009 WL 1653059 at *2 (Tex. App. June 11, 2009) (citation omitted).

HomeStar argues that the plain language of both the 2012 and 2013 MSAs make clear that the parties intended for the 2013 MSA to completely replace the 2012 MSA. Therefore, with regard to the instant matter, the 2013 MSA is the only agreement with any force or effect.

The Court is not persuaded. Under Texas law, where a cause of action arises under a prior contract, the parties' rights and obligations are determined under the then existing contract. See Vanguard Underwriters Ins. Co. v. Vecellio Ins. Agency, Inc., No. 01-98-00986-CV, 1999 WL 159833, at *4-5 (Tex. Ct. App. Mar. 11, 1999) (where the second of two agency agreements superseded and terminated the first, a tolling provision in the second agreement did not apply to claims that arose prior to the effective date of the second agreement); Coffman v. Provos Umphrey Law Firm, LLP, 161 F. Supp. 2d 720, 729 (E.D. Tex. 2001) ("While an integration clause effectively terminates the former agreement after the effective date of the new agreement, the provisions of the former agreement still apply to claims arising prior to the execution of a new agreement.") Therefore, all disputes stemming from violations of the 2012 MSA are properly subject to the terms of the 2012 MSA.

### 2. Whether Disputes That Arose Under the 2012 MSA Fall Within the Scope of the 2012 MSA Arbitration Clause

Under the 2012 MSA, the parties agreed to settle any dispute through binding arbitration. The 2012 MSA states, in relevant part, "[u]nless specifically addressed elsewhere in the Agreement, the parties agree that any controversy or claim between or among the parties hereto shall be determined by binding arbitration." (2012 MSA ¶ 28.) Therefore, the Court grants Homestar's Motion as to all disputes that arose under the 2012 MSA.

### 3. Whether Disputes That Arose Under the 2012 MSA Fall Within the Scope of the 2012 MSA Arbitration Clause

The 2013 MSA directs only non-government related claims to mandatory arbitration. (2013 MSA ¶ 21.) The phrase "non-government related claims" is not defined in the 2013 MSA.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). A contract is unambiguous if it can be given a definite or certain legal meaning. Colom. Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). "On the other hand, if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is

ambiguous, which creates a fact issue on the parties' intent." Id. (citing Universal C. I. T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951)). An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract. Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994). For an ambiguity to exist, both interpretations must be reasonable. Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).

> [I]f after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous. In the latter event the contract will be enforced as written and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.

243 S.W.2d at 157 (citation omitted).

HomeStar argues that, to determine what category of claims must be arbitrated, the plain and ordinary meaning of "government related claims" is relevant. As opposed to non-government related claims that must be arbitrated under the 2013 MSA, government-related claims would be those that are not subject to the arbitration clause.

HomeStar turns to Merriam-Webster Dictionary in order to define "related" as "connected in some way." Given the dictionary definition of

"related," HomeStar argues that if claims are "connected in some way" to "government" then they are not subject to mandatory arbitration under the 2013 MSA. Because its claims are for damages related to the non-payment of services rendered to REO properties owned by the VA, a government entity, HomeStar argues that they are government-related, and therefore not within the scope of the 2013 MSA arbitration clause.

The Court concludes that the meaning of "Government-Related Claims" argued by HomeStar cannot be what the parties intended. Under HomeStar's proffered definition, every potential claim between HomeStar and VRM would be a government-related claim because under the 2013 MSA, all of HomeStar's work for VRM is on properties owned by the VA. Because such a meaning would render the arbitration provision superfluous, it is not a permissible contract interpretation under Texas law. Pavecon, Inc. v. R-Com, Inc., 159 S.W.3d 219, 222 (Tex. Ct. App. 2005) (stating that a court must "interpret a contract in such a manner that none of its provisions will be rendered meaningless") (citation omitted).

Moreover, in its Amended Complaint, HomeStar expressly pleads that "VRM has been fully paid by the VA for the management of the approximately

700 REO properties, yet VRM refuses to pay HomeStar the amount HomeStar is owed." (Am. Compl. ¶ 31.) Because the VA is not owed any amount, and not listed as a party to this dispute, HomeStar's claims must be non-government related and therefore subject to the 2013 MSA arbitration clause. Thus, the Court will grant VRM's Motion as to all disputes arising under the 2013 MSA.

**4. Whether the District Court Should Stay or Dismiss HomeStar's Claims**

"[D]istrict courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." Green v. SuperShuttle Int'l, Inc., 653 F.3d 766, 769-70 (8th Cir. 2011). Because all of HomeStar's claims properly fall within the 2012 and 2013 MSA arbitration provisions, this Court will dismiss HomeStar's Compaint and compel arbitration of the lawsuit.

Accordingly, based upon the files, records, and proceedings herein, IT IS HEREBY ORDERED:

1. Defendant's Motion to Compel Arbitration and Dismiss Litigation [Docket No. 12] is **GRANTED**.

2. Plaintiff's Amended Complaint [Docket No. 5] is **DISMISSED without prejudice.**

Dated: March 16, 2015

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court